**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

**EDWIN TOLEDO-COLON,**

    **Plaintiff,**

    v.

**COMMONWEALTH OF PUERTO RICO, et al.,**

    **Defendants.**

Civil No. 10-2217 (GAG)

**OPINION AND ORDER**

    Edwin Toledo-Colon ("Plaintiff") brought this action against the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Department of Labor and Human Resources ("DOL"), the Puerto Rico Department of Justice ("DOJ"), the Vocational Rehabilitation Administration ("VRA"), and individual defendants[1] in their personal and official capacities (collectively "Defendants").[2] (See Docket No. 1.) This action is brought pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the Federal Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 *et seq.*; Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. §§ 2000d *et seq.*; and 42 U.S.C. § 1983 ("Section 1983"), alleging violations of the First and Fourteenth Amendments of the United States Constitution. Plaintiff also brings state law claims alleging violations of Puerto Rico Law 115 of December 20, 1991 ("Law 115"), P.R. LAWS ANN. tit 29, §194(a); Puerto Rico Law 44 of July 2, 1985 ("Law 44"), P.R. LAWS ANN. tit. 1, §§ 501

---

[1] Myrna Cambrelen, Carmen Diaz, Marideli Arrieta, Maria Benitez, Gilda Dacosta, Ruben Bonilla, Leyda Santiago, and Nydia Colon.

[2] Currently before the court are the Commonwealth, DOL, VRA, and the individual defendants in their personal capacities.

**Civil No. 10-2217 (GAG)** 2

*et seq.*; and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 and 1803"), P.R. LAWS ANN. tit. 31, §§ 5141-5142.

Previously, Defendants moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's claims. (Docket No. 25.) The court granted in part and denied in part the motion. (Docket No. 62.) The court also denied a second motion to dismiss filed by Defendants. (Docket No. 152.) Remaining before the court are Plaintiff's claims for injunctive relief and his Section 1983 claims for monetary damages against the individual defendants in their personal capacities. (See Docket No. 62.) Presently pending before the court is Defendants' motion for summary judgment. (Docket No. 116.) Plaintiff opposed this motion (Docket No. 139) and Defendants filed a reply (Docket No. 156). Also pending before the court are Defendants' motion to strike Plaintiff's statement of material facts (Docket No. 153) and Defendants' motion to deem Defendants' statement of uncontested facts as unopposed (Docket No. 154). After reviewing these submissions and the pertinent law, the court **GRANTS** Defendants' motion to strike Plaintiff's statement of material facts, **GRANTS** Defendants' motion to deem Defendants' statement of uncontested facts as unopposed, and **GRANTS** Defendants' motion for summary judgment.

**I.     Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v.

**Civil No. 10-2217 (GAG)**                                         3

Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.    Plaintiff's Motion *In Limine* to Exclude Exhibits Until Discovery Ends**

Plaintiff argues Defendants did not complete discovery before filing their motion for summary judgment and moves *in limine* to exclude the exhibits until discovery ends. (See Docket No. 139 at 4, 6.) The discovery issue goes back to October 26, 2012, when Plaintiff filed a motion requesting sanctions for Defendants' failure to comply with discovery requests. (See Docket Nos. 100; 139 at 4.) The court denied the motion for sanctions and ordered the parties to meet and "attempt to resolve their discovery disputes consonant with the previous rulings of the Court." (Docket No. 108.) Plaintiff claims he and Defendants scheduled a meeting for November 21, 2012, but Defendants later cancelled. (See Docket No. 139 at 5.) According to Plaintiff, the meeting never took place. (See id. at 5-6.)

Defendants claim "plaintiff's representation to this Court and his request to *in limine* defendants' motion for summary judgment and reopen discovery are unwarranted by the facts."

**Civil No. 10-2217 (GAG)**                              4

(See Docket No. 156 at 3.) Defendants correctly point out that the court denied Plaintiff's "motion requesting denial or stay resolution of summary judgment motion, in limine exhibits and order conclusion of discovery," filed on February 4, 2013. (See Docket No. 127.) The court indicated that "from the court's perspective, discovery has ended and no timely request for extension by any of the parties was sought." (See Docket No. 132.) Therefore, the docket indicates that discovery was complete before Defendants' filed their motion for summary judgment.

Defendants present further evidence showing they complied with all relevant discovery requests. On November 6, 2012, Defendants sent Plaintiff a letter stating discovery concluded on October 12, 2012, but that in good faith were willing to confer to discuss any disputes. (See Docket No. 156-1.) The letter included three dates Defendants were available to confer. On November 19, 2012, Defendants sent Plaintiff a second letter offering three alternative dates. (See Docket No. 156-2.) According to Defendants, Plaintiff did not reply to the letters. (See Docket No. 156 at 4.) Defendants further claim Plaintiff examined his complete file with Defendants on December 20, 2010. (Id. at 4-5.)

Based on the aforementioned, the court reasserts that discovery ended. Plaintiff's previous motion *in limine* was denied by the court, Plaintiff never timely requested an extension of the discovery period, and Defendants present evidence demonstrating good-faith in their willingness to confer. Plaintiff's *in limine* motion to exclude Defendants' exhibits and reopen discovery is hereby **DENIED**.

**III.    Statement of Uncontested Material Facts**

Defendants filed a statement of uncontested material facts (Docket No. 117) and submitted certified English translations of Spanish language exhibits (Docket No. 126). Plaintiff did not oppose Defendants' statement of uncontested facts. Rather, Plaintiff filed his own statement of material facts (Docket No. 140). Defendants filed a motion to strike Plaintiff's statement of material facts (Docket No. 153) and a motion to deem Defendants' statement of uncontested facts as unopposed (Docket No. 154). The court will address each motion in turn.

**Civil No. 10-2217 (GAG)**                              5

### A. Motion to Strike Plaintiff's Statement of Material Facts

Defendants filed a motion to strike Plaintiff's statement of material facts (Docket No. 153) arguing that Plaintiff's facts are not properly supported by specific record citations and include prohibited opinions, argumentation, and conclusions.

Local Rule 56(e), known as the anti-ferreting rule, provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." L.Cv.R. 56(e). "The anti-ferret rule serves one crucial purpose. It lays out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." Dominguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997). "[A] party's failure to comply would, where appropriate, be grounds for judgment against that party." Stepanischen v. Merchants Despatch Transp., 722 F.2d 922, 927 (1st Cir. 1983).

In addition to the Local Rule 56(e) requirements, parties must file all exhibits in English. Under 48 U.S.C. § 864, "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language." The First Circuit has held that district courts cannot consider any Spanish documents before them. See Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008); Gonzalez-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004).

Plaintiff's statement of material facts includes facts that contain no record citation to demonstrate support, facts which cite exhibits, but leave out the specific location of the evidentiary support, and facts that are speculative. When Plaintiff does cite to record material, the court does not know to which exhibit Plaintiff is citing. Plaintiff cites thirty-five exhibits, but the documents attached are marked from one to sixty-two and skip various numbers. Even if the court were to mark each document consecutively, the documents would not match Plaintiff's statement of material facts. For example, Plaintiff cites Exhibit 6 as "Consumer Folder Contact Log." (See Docket No. 140 at 5.) A review of the documents reveals that the sixth attached exhibit is not a consumer folder

**Civil No. 10-2217 (GAG)**                    6

contact log, rather it is handwritten note in Spanish . (See Docket No. 140-6.) Plaintiff's complete failure to comply with Local Rule 56 ignores the purpose of the anti-ferret rules, and wastes the court's time. Plaintiff's counsel is a local attorney, duly admitted to practice in federal court in Puerto Rico. As such, he should not only be aware of the local rules, but should follow them in the future.

Even if the court attempts to review Plaintiff's documents, and is able to locate the correct documents, the court cannot consider any of them because they are all in Spanish. On February 12, 2013, Plaintiff filed a motion for extension of time to file certified translations as to Exhibit 1. (See Docket No. 138.) The court granted Plaintiff's motion for extension of time until March 10, 2013; however, Plaintiff never filed the translated documents. (See Docket No. 142.) The court cannot consider any Spanish documents before it. Considering the documents are not properly cited and all are in Spanish, the court strikes Plaintiff's statement of material facts.[3]

### B. Motion to Deem Defendants' Statement of Uncontested Material Facts as Unopposed

Defendants also filed a motion to deem their statement of uncontested facts as unopposed due to Plaintiff's failure to comply with Local Rule 56(c), and properly oppose them. (Docket No. 154.) When confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall **admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement** of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation . . . .

L.Cv.R. 56(c) (emphasis added). A party opposing summary judgment has the obligation to admit,

---

[3] At the end of Plaintiff's statement of material facts, Plaintiff lists 44 facts and claims they should be admitted considering Defendants "admitted to the following facts because they answer their request tardy." (Docket No. 140 at 15.) Plaintiff does not further explain why the facts should be admitted. The court understands these facts were included in Plaintiff's motion requesting sanctions due to the discovery dispute at Docket No. 104. This motion was denied by Magistrate Judge Velez-Rive at Docket No. 108. The court will not deem the facts as admitted.

**Civil No. 10-2217 (GAG)**                              7

deny, or qualify the moving party's statements of uncontested fact. If the non-moving party wishes, it may include a separate section that includes additional facts. See L.Cv.R. 56(c). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -- and what is not -- genuinely controverted.'" Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) (quoting Calvi v. Knox Cty., 470 F.3d 422, 427 (1st Cir. 2006)). Where a party does not act in compliance with Local Rule 56(c), "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated."

The court notes Plaintiff did not admit, deny, or qualify the moving party's statements of uncontested fact. Instead, Plaintiff submitted a separate section that included additional facts that, as discussed above, are inadmissible. Plaintiff ignored Local Rule 56 at his own risk by neglecting to admit, deny, or qualify plaintiff's factual assertions. (See P.R. Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010) ("[W]e have held with a regularity bordering on the monotonous that parties ignore the strictures of an "anti-ferret" rule at their peril.") The assertions contained in Defendants' statement of uncontested facts (Docket No. 117) are **DEEMED ADMITTED**.

**IV.    Factual Background**

After disposing of the preceding motions, the court turns to actual facts of the case. The VRA operates the Vocational Rehabilitation Program in Puerto Rico. P.R. LAWS ANN. tit. 18, § 1064(a). Plaintiff alleges he suffers from "Avoid Personal Disorder" and began receiving VRA services on January 16, 2002, while pursuing a bachelor's degree at the University of Puerto Rico ("UPR"). (See Docket No. 117-1 at 51, LL. 2-11, at 36, LL. 17-25.) Plaintiff received payment for books, guidance, housing, and food expenses. (See id. at 52, LL. 6-25.) The VRA also paid for photography classes and digital photography equipment costing $5,120.18. (See id. at 56, LL. 13-22, at 60, LL. 17-18.) In 2004, Plaintiff requested equipment totaling $37,000, without knowing why he needed the equipment. (See Docket Nos. 117-1 at 80, LL. 14-25, at 81, LL. 20-21; 126-1.) The VRA denied his request and Plaintiff earned his bachelor's degree in December 2004 without the requested equipment. (See Docket No. 117-1 at 24, LL. 9-19, at 87, LL. 10-14.) After Plaintiff

**Civil No. 10-2217 (GAG)**                                              8

graduated from UPR, the VRA kept on paying the lease on his apartment. (See id. at 61-63.) Plaintiff admits "the VRA went above their dollar limits for housing costs in order to afford [him] a private apartment." (See id. at 68, LL. 6-12.) In January 2005, Plaintiff enrolled in graduate studies at the Sacred Heart University ("SHU") to pursue a Master of Advertising, sponsored by the VRA. (See id. at 24, LL. 24-25, at 25, LL. 1-4, at 91, LL. 13-15.) Plaintiff once again requested equipment costing approximately $40,000. (See Docket No. 126-6 at 1.) The VRA offered Plaintiff services, but denied his request for the $40,000 equipment.

On September 12, 2006, Plaintiff signed a document titled "Economic Analysis for the Contribution of Services" attesting that he did not work and that his monthly household income consisted of $104 in nutritional assistance and $548 in social security benefits. (See Docket No. 126-11.) Based on this information, the VRA afforded Plaintiff $7,230. (See id.) At the time Plaintiff signed the document, he had been working with the Municipality of Caguas since 2005. (See id. at 26, LL. 12-25.) Plaintiff held a contract with the Municipality of Caguas from August 7, 2006 to December 31, 2006 for Advertising services in the amount of $12,500. (See Docket No. 117-15.) He also held a contract with the Municipality of Caguas from August 7, 2006 to June 30, 2007 in the amount of $15,000. (See Docket No. 117-16.) On January 15, 2008, Plaintiff signed another "Economic Analysis for the Contribution of Services," again attesting he did not have a job and that he relied on his parents. (See Docket No. 126-12.) Based on this information, the VRA afforded Plaintiff $1,710. (See id.) At the time Plaintiff signed the document, he held a contract with the Municipality of Caguas with an effective date from July 1, 2007 to June 30, 2008 for $15,000. (See Docket No. 117-19.) He also held a contract with the Municipality of Caguas from July 7, 2008 to December 31, 2008 for $6,000. (See Docket No. 117-20.)

On July 30, 2008, Plaintiff's thesis professor sent a letter to Wanda Lozada ("Lozada") recommending the equipment be granted to Plaintiff, even though "not every thesis requires this type of equipment." (See Docket No. 126-9.) On February 11, 2009, Nydia Colon Zayas ("Colon Zayas"), Administrator of the VRA, addressed Plaintiff's equipment request and indicated that the

**Civil No. 10-2217 (GAG)**                              9

services provided by the VRA should be aimed to place "students with disabilities competing on an equal playing field with students without disabilities, without giving them any vantage points because of their condition." (See Docket No. 126-5.) On May 6, 2009, Leyda Santiago ("Santiago") and Maria Benitez ("Benitez") submitted an opinion of the Office of Counseling Services in Vocational Rehabilitation ("OSCRV," for its Spanish acronym) addressed to Colon Zayas, explaining why OSCRV did not endorse the equipment Plaintiff requested. (See Docket No. 126-6.) The main reasons OSCRV did not endorse the equipment are as follows: (1) the equipment was not "required from all other students, pursuant to the consumer's employment goal;" (2) SHU does not require students to incur such excessive expenses in order to present their thesis; and (3) the university does not require students to prepare a documentary to present their thesis. (See id. at 1-3.) On May 21, 2009, Colon Zayas and Santiago signed a letter recommending other technological equipment (MacBook Pro computer, economic printer, pen drive, writing program, and possibly a graphics program) be purchased for Plaintiff in order for him to finish his master's degree thesis. (See Docket No. 126-7.)

Plaintiff signed three forms titled "Individualized Plan for Employment" ("IPE") covering periods from November 6, 2009 to November 30, 2009, February 22, 2010 to July 31, 2010, and August 23, 2010 to September 30, 2010. (See Docket Nos. 126-2; 126-3; 126-4.) Plaintiff indicated in the IPE's that he participated in the planning and development of the requests. (See id.) Plaintiff never objected the non-inclusion of the equipment in the comments section. (See id.)

On July 18, 2006, the VRA adopted Policy Communication No. 2007-03 ("Normative Communication")[4] regarding "Procedure to Recommend the Training Service at Graduate Level

---

[4] Plaintiff argues the Normative Communication "does not supersede the Code Federal Regulations thus, are inapplicable to all of the extent to the interpretation and implementation of the Rehabilitation Act to this case." (See Docket No. 139 at 47.) He further indicates that the "trial court must ascertain whether Congress intended to set aside any state law when it enacted the federal statute." (Id.) The court does not understand most of Plaintiff's six page discussion and finds Plaintiff fails to analyze the issue at all.

**Civil No. 10-2217 (GAG)**                              10

under Sponsorship of the Vocational Rehabilitation Administration." (See Docket No. 126-8.) The Normative Communication indicates that "training supplies shall be provided if and when these are required of all the other students in accordance with the consumer's employment goal." (See id. at 22.) It also states the VRA considers the "economic situation of the consumer/family, to determine its contribution to the graduate training costs and expenses related to the same, for the achievement of its employment goal." (See id. at 8.) The consumer must also demonstrate his or her economic resources and the efforts made to obtain "scholarships, economic aid from the institution and any other assistance which is considered as comparable services and benefits." (See id.) All resources obtained by the consumer "shall be considered and applied to cover in whole or in part the training costs and other related services." (See id. at 9.) In order to determine the economic contribution of the consumer and family, the consumer must provide the economic information required to the CRV once a year and "when there are changes in the resources and income of the family nucleus in the aids or financial assistance it receives for studies." (See id. at 9-10.) Plaintiff signed a certification stating he understood that giving false information in the application or during the process of receiving services could entail immediate suspension of services. (See Docket No. 126-10 at 2.)

During Plaintiff's deposition, Plaintiff explains why he is suing each individual defendant. The court addresses each individual defendant below.

    **A.    Wanda Lozada**

Plaintiff is suing Lozada in her personal capacity as VRA counselor at the UPR. (See Docket No. 1 at 10 ¶ 5.) On December 3, 2008, Lozada sent other VRA employees an email explaining she met with Plaintiff and requested several documents from him in order to analyze his application for equipment. (See Docket No. 126-13.) On February 5, 2009, Lozada sent Plaintiff a letter listing the documents that Plaintiff needed to submit. Lozada requested, among other documents, a letter of unemployment and an Income Tax Filing Certification from the Revenue Service. (See Docket No. 126-14.)

**Civil No. 10-2217 (GAG)**                                11

### B.    Nydia Colon Zayas

Plaintiff is suing Colon Zayas in her personal capacity as VRA Administrator. (See Docket No. 1 at 9 ¶ 3.) Plaintiff does not know Colon Zayas and has never spoken to her. (See Docket No. 117-13 at 83, LL. 2-7.) Plaintiff is suing Colon Zayas because "she is the person representing the agency, and she had the opportunity of solving the case," she is the person in charge, and she did not provide Plaintiff "with the reasonable accommodation requested." (See id. at 83, LL. 8-19.) He claims Colon Zayas retaliated against him because there are "internal communications showing that the administrative party knows about [Plaintiff's] case." (See id. at 96, LL. 9-13.) He also states she had all his "services canceled for a trimester or a semester" when he turned over his tax returns. (See id. at 97 LL. 23-25.)

### C.    Myrna Cambrelen

Plaintiff is suing Myrna Cambrelen ("Cambrelen") in her personal capacity as Aide to VRA's Administrator. (See Docket No. 1 at 11-12 ¶ 11.) Plaintiff has only seen Cambrelen once. (See id. at 98, LL. 14-15.) Plaintiff alleges she made commitments with him "to resolve the matter, and from the time she became aware of the matter, discriminatory began against [him], began to appear." (See id. at 98, LL. 16-20.) He further states that "all consultations that were made were copied to [her]." (See id. at 98, LL. 22-24.)

### D.    Marideli Arrieta

Plaintiff is suing Marideli Arrieta ("Arrieta") in her personal capacity as Supervisor of VRA's office at the UPR. (See Docket No. 1 at 9-10 ¶ 9.) Plaintiff states that Arrieta was his supervisor, and later counselor, or both. (See id. at 109, LL. 1-5.) Plaintiff does not explain "how the discriminatory process took place, because with [Arrieta] other people took part." (See id. at 109, LL. 1-5.) He claims Arrieta placed "malicious consultations with the administration through e-mails, and delays in the entire administrative process purposely," and that "[s]he wanted [him] to renounce the equipment in exchange for services." (See id. at 111, LL. 4-6.) He further alleges Arrieta retaliated against him by delaying the services. (See id. at 115, LL. 1-2.)

**Civil No. 10-2217 (GAG)**                            12

### E.     Maria Benitez

Plaintiff is suing Benitez in her personal capacity as VRA Rehabilitation Specialist. (See Docket No. 1 at 9-10 ¶ 4.) Plaintiff alleges that the agency found the equipment requested to be of a professional nature when Benitez started evaluating the case. (See id. at 116, LL. 7-12.) Plaintiff indicates Benitez was delaying the case at OPPI.[5] (See Docket No. 117-13 at 117, LL. 2-3.) He admits that Benitez was not the attorney that represented the VRA before OPPI. (See id. at 118, LL. 7-11.)  He further states that Bentiez retaliated against him "because the allegations used to discriminate against the equipment, or not to approve them, are discriminatory." (See id. at 118, LL. 12-18.)

### F.     Ruben Bonilla

Plaintiff is suing Ruben Bonilla ("Bonilla") in his personal capacity as VRA Supervisor of the San Juan regional office. (See Docket No. 1 at 10-11 ¶ 7.) Plaintiff states that he is suing Bonilla because he made an economic study determining the VRA should only pay 60% of Plaintiff's services. (See Docket No. 117-13 at 122, LL. 8-24.) Plaintiff admits the VRA always paid his services in full. (See id. at 124, LL. 16-18.) Plaintiff alleges Bonilla retaliated against him because "it was on his watch that [Plaintiff's] services were canceled. Besides the fact that he was an area supervisor, and he had knowledge of the case." (See id. at 125, LL. 17-21.)

### G.     Gilda Dacosta

Plaintiff is suing Gilda Dacosta ("Dacosta") in her personal capacity as VRA counselor at the UPR. (See Docket No. 1 at 10 ¶ 6.) Plaintiff alleges Dacosta caused "delays in the process, she was aware that [Plaintiff] needed that equipment urgently . . . [a]nd she did not act with the seriousness that the law requires to meet the goals of a student." (See Docket No. 117-13 at 126, LL. 2-8.) He alleges Dacosta retaliated against him because "he became aware that [Plaintiff] urgently needed that equipment, and her answer . . . was that these situations had to be worked with

---

[5] Office of the Advocate for Persons with Disabilities (OPPI, for its Spanish acronym).

**Civil No. 10-2217 (GAG)**                    13

priority, so that the student could be able to accomplish his or her educational goal, or seek other options." (See id. at 127, LL. 2-11.)

### H. Leyda Santiago

Plaintiff is suing Santiago in her personal capacity as VRA Director. (See Docket No. 1 at 11 ¶ 8.) Plaintiff alleges Santiago "was a part of the discriminatory committee of the services that [Plaintiff] needed, to be able to meet [his] goals." (See Docket No. 128, LL. 11-14.) Santiago discriminated against Plaintiff because she was "a part of groundless evaluations that had no arguments." (See id. at 128, LL. 15-19.) Plaintiff claims Santiago retaliated against him because she signed many of the documents denying the equipment Plaintiff requested. (See id. at 129, LL. 21-25.) Plaintiff does not remember if he ever met with Santiago. (See id. at 127, LL. 21-25.)

### I. Carmen Diaz

Plaintiff is suing Carmen Diaz ("Diaz") in her personal capacity as VRA Director. (See Docket No. 1 at 11 ¶ 10.) Plaintiff is suing Diaz for the same reasons he is suing Santiago. When asked why Diaz retaliated against him, Plaintiff answered it was "unacceptable that some equipment is requested in 2003, and . . . halfway through everything, by 2008, before [OPPI] ever reaches a decision, the administration is incapable of deciding, because obviously they wanted to delay the process . . . ." (See id. at 13, LL. 5-18.)

## V. Discussion

Remaining before the court are Plaintiff's claims for injunctive relief and his Section 1983 claims for monetary damages against the individual defendants in their personal capacities. Plaintiff invoked three constitutional provisions in support of his Section 1983 claim: (1) equal protection under the Fourteenth Amendment; (2) freedom of speech (retaliation) under the First Amendment; and (3) due process under the Fourteenth Amendment. In addition to these claims, the court will also consider Plaintiff's Title VI claim.

### A. Underlying Claim to Support Plaintiff's Section 1983 Action

#### 1. Equal Protection

**Civil No. 10-2217 (GAG)**                    14

Defendants argue Plaintiff's Equal Protection claim should be dismissed because Plaintiff does not point out "any law creating a classification that burdens a fundamental right nor has he established being targeted as a member of a suspect class." (See Docket No. 116 at 7.) In the opposition to Defendants' motion for summary judgment, Plaintiff cites cases, but does not discuss the facts of his case. (See Docket No. 139 at 54.)

Under the Equal Protection Clause, similarly situated persons are entitled to receive similar treatment at the hands of government actors. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 57 (1st Cir. 2006). A plaintiff alleging an equal protection violation must show that, "compared with others similarly situated, [he] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995) (citations omitted). A necessary element in an equal protection claim is proof of intent to discriminate. Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997.) "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." Bd. of Trs. of Univ. of Ala. V. Garrett, 531 U.S. 356, 367 (2001)

Plaintiff fails to allege that he has been treated differently from others similarly situated. He also fails to show evidence that Defendants took any adverse action with malice or in bad faith because of his disability. See Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000) (explaining the bad faith and malice standard). Plaintiff's deposition testimony is the only evidence regarding the individual defendants' conduct, but even this lacks factual support to demonstrate intent to discriminate. Accordingly, the court **GRANTS** Defendants' motion for summary judgment on this ground and **DISMISSES** Plaintiff's equal protection claim.

### 2. First Amendment

Defendants argue Plaintiff's retaliation claim under the First Amendment is unsupported and should be dismissed. Plaintiff does not address his First Amendment retaliation claim in his opposition to Defendants' motion for summary judgment.

**Civil No. 10-2217 (GAG)**                    15

To establish a First Amendment retaliation claim, "[a] plaintiff must prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." D.B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). "The defendant may then avoid a finding of liability by showing that 'it would have reached the same decision . . . even in the absence of the protected conduct.'" Powell v. Alexander, 391 F.3d 1, 17 (1st Cir. 2004).

In his complaint, Plaintiff bases his First Amendment retaliation claim on statements to the EEOC and participation as a witness before the EEOC. "Citizens have a First Amendment right to engage in certain kinds of speech, including the filing of civil actions, and testifying at administrative hearings." Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 16 (1st Cir. 2011) (internal citations omitted). However, Plaintiff fails to satisfy the first prong because he does not show any evidence relating to his participation with the EEOC. By failing to present evidence of his participation with the EEOC, Plaintiff fails to show the alleged protected conduct was a "substantial" or "motivating factor" in the decision to deny assistive equipment.

Even if Plaintiff had presented evidence satisfying his burden, Defendants show that they would have reached the same decision absent protected speech. Defendants claim that, acting in accordance with the Normative Communication, they denied the equipment because it was not requested by the rest of the students. (See Docket No. 116 at 9.) They based their decision on Plaintiff's thesis professor who admitted that "not every thesis requires this type of equipment." (See Docket No. 126-9.) Defendants also found that SHU does not request any of its students to incur excessive expenses such as $40,000 to present their master's thesis. Furthermore, Plaintiff did not disclose in his application for VRA services that he was employed by the Municipality of Caguas.

Accordingly, the court **DISMISSES** Plaintiff's retaliation claim under the First Amendment against Defendants.

**3.     Due Process**

**Civil No. 10-2217 (GAG)**                       16

Plaintiff did not specify whether he is stating violations to his procedural or substantive due process rights. The court will address both.

### a. Procedural Due Process

To state a valid procedural due process claim, a plaintiff must (1) "identify a protected liberty or property interest," and (2) "allege that the defendants . . . deprived [him] of that interest without constitutionally adequate process." Gonzalez-Droz, 660 F.3d at 13 (1st Cir. 2011) (quoting Aponte-Torres, 445 F.3d at 56) (internal quotation mark omitted).

First, Plaintiff has failed to identify a deprivation of a liberty or property interest. The court assumes Plaintiff refers to the denial of his request for the equipment. Even if Plaintiff would have identified a protected interest, Defendants claim that vocational services are not a fundamental right created by the Constitution. In relation to determining eligibility and priority for vocational rehabilitation services Defendants quote 34 C.F.R. § 361.42(a)(5), which indicates that "[n]othing in this section . . . is to be construed to create an entitlement to any vocational rehabilitation service." Second, Defendants claim they provided Plaintiff with the services set forth in the IPE that Plaintiff helped plan and develop. Production equipment was never included in the IPE and Plaintiff never objected to the non-inclusion of the equipment. By providing Plaintiff with everything listed in the IPE, Defendants did not deprive Plaintiff of a property right to the equipment. The court is not presented with evidence showing Defendants deprived Plaintiff of an interest. Therefore, the court **DISMISSES** Plaintiff's procedural due process claim against Defendants.

### b. Substantive Due Process

In order to establish a substantive due process claim a plaintiff must show: (1) that there has been "a deprivation of a protected interest in life, liberty, or property," (2) "that the deprivation of this protected right was caused by governmental conduct," and (3) that "the state actions must shock the conscience of the court." Rivera v. Rhode Island, 402 F.3d 27, 33-36 (1st Cir. 2005) (citations omitted). Courts may first address whether the government conduct at issue is sufficiently conscience shocking. Cty. of Sacramento v. Lewis, 523 U.S. 833, 847, n.8 (1998). The "burden to

**Civil No. 10-2217 (GAG)**                17

show state conduct that 'shocks the conscience' is extremely high, requiring 'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from bad faith' to 'something more egregious and more extreme.'" J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010) (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005)).

In the opposition to Defendants' motion for summary judgment, Plaintiff does not address the facts of his case. As already discussed, Plaintiff fails to show a deprivation of a protected interest. Assuming Plaintiff refers to the VRA denying his request for the equipment, Plaintiff does not show the protected conduct was caused by government conduct. During Plaintiff's deposition, Plaintiff makes conclusory allegations regarding Defendants without presenting evidence supporting his allegations. For instance, in various occasions Plaintiff claims that Defendants' discrimination will be seen in the evidence, but Plaintiff fails to present this evidence to the court. Consequently, Plaintiff fails to show Defendants' actions against him were "conscience shocking."

Accordingly, the court **DISMISSES** Plaintiff's substantive due process claim against Defendants.

### B. Title VI Claim

Defendants argue that Plaintiff fails to state a claim under Title VI of the Civil Rights Act because he has not been discriminated due to his race, color, or national origin. (See Docket No. 116 at 20.) Plaintiff contends Title VI prohibits disability discrimination pursuant to Executive Order 13160. (See Docket No. 139 at 56-57.)

Title VI prohibits discrimination based on "race, color, or national origin" in federally assisted programs and activities. 42 U.S.C. § 2000d. A plaintiff stating a claim under Title VI must allege that: "(1) . . . there is racial or [other prohibited] discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance." Baker v. Bd. of Regents of State of Kan., 991 F.2d 628, 631 (10th Cir. 1993). Executive Order No. 13160 prohibits "discrimination on the basis of race, sex, color, national origin, disability, religion, age, sexual orientation, and status as a parent . . . in Federally conducted education and training programs and activities." 65 F.R. 39775.

**Civil No. 10-2217 (GAG)**                              18

Section 2 of the Executive order defines "federally conducted education and training programs and activities" as "programs and activities conducted, operated, or undertaken by an executive department or agency." Id.; Rosario de Leon v. Nat'l Coll. of Bus. & Tech., 663 F. Supp. 2d 25, 35 (D.P.R. 2009). Discrimination on the basis of disability is prohibited when an executive department or agency is involved.

In the instant case, it is unnecessary to determine if Plaintiff's discrimination claims are against an executive department or agency. The court dismissed Plaintiff's Title II and ADA claims for failure to allege that denial of his equipment requests "was by reason of his disability." (See Docket No. 62 at 14.) The court noted that although Plaintiff properly alleges he is a qualified individual with a disability, he does not allege he was discriminated or denied from participating or benefitting from VRA's services because of his disability. (See id.) In order to prevail under a Title VI claim, Plaintiff must show there is prohibited discrimination. Plaintiff fails to proffer an adequate Title VI claim because he does not allege he was discriminated against due to his disability. Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiff's Title VI claim and **DISMISSES** the same.

### C. Supplemental Jurisdiction Claims

Next, the court considers Plaintiff's claims that arise under Law 115, Law 44, Article 1802, and Article 1803. It is within the discretion of the court to exercise supplemental jurisdiction over local law claims once the federal claims have been dismissed. See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (stating, "To be sure, the exercise of supplemental jurisdiction in such circumstances is wholly discretionary.") In this case, all of Plaintiff's local law claims arise from the same set of alleged discriminatory acts as Plaintiff's federal law claims. The court has analyzed the pertinent facts and found no genuine issues of material fact exist. In order to conserve judicial resources, the court exercises its discretion to rule on Plaintiff's local law claims. These claims fail for the same reasons as Plaintiff's federal law claims fail, that is, he has not created any genuine issue of material fact. Therefore, the court **DISMISSES** Plaintiff's local law claims.

**Civil No. 10-2217 (GAG)**                              19

### D.  Injunctive Relief

The final issue to be resolved is Plaintiff's request for injunctive relief.  Plaintiff does not specify whether he is requesting preliminary or permanent injunction, therefore the court will quickly address both.

"A district court faced with a motion for a preliminary injunction must weigh four factors: '(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest.'" Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 48 (1st Cir. 2013) (quoting United States v. Weikert, 504 F.3d 1, 5 (1st Cir. 2007)).  "'The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.'"  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 32 (2008) (quoting Amoco Prod. Co. v. Vill. of Gambell, AK, 480 U.S. 531, 546, n.12 (1987)).  In a case such as this, when the court has determined that Plaintiff does not succeed on the merits, neither a preliminary, nor a permanent injunction are proper.  Therefore, the court **DISMISSES** Plaintiff's motion for injunctive relief.

## VI.  Conclusion

For the foregoing reasons, the court **GRANTS** Defendants' motion to strike Plaintiff's statement of material facts (Docket No. 153), **GRANTS** Defendants' motion to deem Defendants' statement of uncontested facts as unopposed (Docket No. 154), and **GRANTS** Defendants' motion for summary judgment (Docket No. 116).

   **SO ORDERED**

In San Juan, Puerto Rico this 26th day of April, 2013.

                                        *S/Gustavo A. Gelpí*
                                        GUSTAVO A. GELPÍ
                                        United States District Judge